**Linwood E. JOHNSON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 8683.

District of Columbia Court of Appeals.

Argued Nov. 4, 1975.

Decided April 29, 1976.

Rehearing en Banc Granted
July 30, 1976.

---

**640**

Walter G. Birkel, Washington, D. C., appointed by the court, with whom Mac Asbill, Jr., Washington, D. C., also appointed by the court, was on the brief, for appellant.

Michael H. Gertner, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Stuart M. Gerson and John O'B. Clark, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY, YEAGLEY and MACK, Associate Judges.

KELLY, Associate Judge:

Appellant, Linwood E. Johnson, and two codefendants were convicted of the armed robbery[1] of a pastry deliveryman following a jury trial. On appeal, Johnson claims that the trial judge erred in failing, sua sponte, to immediately instruct the jury on the limited admissibility of a prior inconsistent statement used to impeach one of the codefendants who testified in his behalf. Finding plain error, we reverse the conviction and remand the case for a new trial.

Briefly, the government's case consisted of evidence that two men robbed the deliveryman at gunpoint of a sum of money and two pies. An unidentified witness took down the license plate number of the vehicle in which the robbers left the scene and the car was stopped by the police shortly thereafter. A passenger in the backseat, codefendant Harry Allen, fled the scene but was chased and apprehended. Appellant, the driver, and a frontseat passenger were ordered from the car. A search of the car turned up a gray coat, worn by one of the robbers, and two pies. Money was found in the gray coat and on appellant's person; a gun and a wallet were recovered near the place where the fleeing passenger was arrested. The deliveryman was unable to identify appellant as a participant in the robbery.

Following the denial of a motion for a judgment of acquittal, codefendant Harry Allen gave exculpatory testimony in appellant's behalf. He stated that throughout the robbery and its immediate aftermath appellant had been incapacitated by the effect of narcotics withdrawal and oblivious to the fact that a robbery had occurred. He conceded his own direct involvement in the crime.

▆▆ Allen was impeached by the testimony of the government's rebuttal witness, Officer Bobby Collins, who testified that

1. D.C.Code 1973, §§ 22–2901, 22–3202. A threshold question of this court's jurisdiction, raised because of an apparent premature notice of appeal under our decision in *West v.* *United States*, D.C.App., 346 A.2d 504 (1975), has been eliminated by the filing of a supplemental transcript of the sentencing proceedings.

shortly after the arrest of appellant and his codefendants, Allen had made a statement to him denying his own active involvement and implicating appellant as a participant in the robbery. Neither counsel requested that the jury be immediately instructed on the limited purpose for which hearsay evidence of a prior inconsistent statement could be admitted[2] and no limiting instruction was given at that time.[3]

■ Generally, where a party fails to request an instruction on limited admissibility of evidence, the failure of the trial judge to give such an instruction, sua sponte, will not be considered on appeal. *Dixon v. United States,* D.C.App., 287 A.2d 89, 98, *cert. denied,* 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972). We have recognized, however, that the potential for jury confusion is so great where prior inconsistent statements are admitted for a limited purpose as to justify the requirement of an immediate cautionary instruction. *Id.* at 99.

■ In *Lofty v. United States,* D.C. App., 277 A.2d 99 (1971), a trial judge's failure, sua sponte, to immediately instruct the jury on the limited admissibility of a prior inconsistent statement was held to be plain error requiring reversal. *See* Super. Ct., Cr.R. 52(b). We conclude that the rationale underlying that decision controls the result in this case.

The dissent would distinguish *Lofty* on the ground that there the government was impeaching its own witness, whereas in the

instant case it impeached a defense witness. It is said that the impeachment of one's own witness by prior inconsistent statement might convey the impression that additional substantive evidence is being offered, while impeachment of a hostile witness would not, and that, therefore, the requirement of an immediate instruction is justified only in the former instance.

This distinction was deemed irrelevant in *Jones* where the court explained that underlying the requirement of an immediate instruction was the policy of restricting the jury's exposure to hearsay evidence. *Jones v. United States, supra* at 40, 385 F.2d at 300. *See also United States v. Leonard,* 161 U.S.App.D.C. 36, 494 F.2d 955 (1974). Regardless of whose witness is being impeached, it is unrealistic to assume that jurors hearing testimony of a prior inconsistent statement would consider that statement as anything but substantive evidence unless they were instructed otherwise.[4]

The dissent contends further that our holding in *Dixon v. United States, supra,* bars our application of the plain error rule in this case. In *Dixon* we held that when a defendant is impeached by evidence of a prior conviction pursuant to D.C.Code 1973, § 14–305, the trial judge's failure to give an immediate cautionary instruction, sua sponte, is not plain error. It was specifically recognized in *Dixon,* however, that a different situation is presented when, as in this case, a witness is impeached by evidence of a prior inconsistent statement. The court stated:

> not reveal any evidence of affirmative waiver. *See Jones v. United States, supra* at 39, 385 F.2d at 299.

2. As hearsay, Allen's prior inconsistent statement could not properly have been considered for the truth it stated. *Jones v. United States,* 128 U.S.App.D.C. 36, 385 F.2d 296 (1967). It could have been considered as proving simply that the statement had been made since the mere fact that a witness has made contradictory statements is relevant to an evaluation of credibility. *Id.* at 40, 385 F.2d at 300.

3. In his final charge to the jury, the trial judge included a general instruction on the limited admissibility of prior inconsistent statements which did not, however, specifically refer to the testimony in question. While an accused may, of course, waive the right to a cautionary instruction, the record here does

4. It is apparent from the verdict of guilty that the jury chose to disbelieve Allen's exculpatory testimony and it is probable that in making this choice the jury credited his prior inconsistent statement as substantive evidence of what had transpired, particularly since the prosecutor, in his closing argument, emphasized the prior inconsistent statement in a way which indicated that it could be so viewed. (Supplemental Record II, Tr. 27, 51–3.) Considered as substantive evidence, Allen's prior inconsistent statement effectively controverted appellant's sole defense of nonparticipation in the crime.

After careful consideration, we believe that the high probability of jury confusion in the "prior inconsistent statement" cases which required the exceptional use *sua sponte* of an immediate cautionary instruction by the trial court is not present in the case of "prior convictions" evidence used for impeachment. . . . [*Id.* at 99.]

It is urged finally that Super.Ct.Cr.R. 30 precludes us from regarding the omission of an unrequested instruction as plain error within the meaning of Super.Ct.Cr. R. 52(b).[5] This very argument was made and rejected in *United States v. McClain*, 142 U.S.App.D.C. 213, 440 F.2d 241 (1971), where in a discussion of both rules, the court stated:

[T]he failure of defense counsel to request such an instruction does not automatically bar this court from reaching the error if the instruction is not given. [*Id.* at 217, 440 F.2d at 245.]

*Reversed.*

YEAGLEY, Associate Judge (dissenting):

I am not prepared to extend the scope of the plain error rule any further. Accordingly, I dissent. I thought that our invoking the rule in *Lofty v. United States*, D. C.App., 277 A.2d 99 (1971), relied on by the majority, was an extremely close question and represented its outer limits. A strong argument can be made that we went too far in *Lofty*. Neither *Lofty* nor this case involves the denial of a basic element of a fair trial. The instant case involves only the question of whether an instruction that was given at the end of the trial should also have been given sua sponte

when impeaching testimony was admitted. In this case neither the court nor counsel perceived that the situation called for action whereas in *Lofty* the defect was deliberate and not an oversight for the prosecutor had suggested at the time that an instruction be given immediately. *Id.* at 100.

In the course of the broadening application of the plain error rule there has been a tendency to forget that "plain error" is not the rule but the exception. The general rule, with which we must begin, is that trial errors must be objected to at the time they occur if they are to be considered on appeal. *Adams v. United States,* D.C.App., 302 A.2d 232, 234–35 (1973); *Wooten v. United States,* D.C.App., 285 A.2d 308, 309 n. 3 (1971); *Bunter v. United States,* D. C.App., 245 A.2d 839, 841–42 (1968).

Not long after our decision in *Lofty* this court severely limited the scope of that decision after carefully examining the plain error rule. In that case, *Dixon v. United States,* D.C.App., 287 A.2d 89, 97 (1972), this court held that its decision was not controlled by a statement in *Lofty* taken from *United States v. McClain,* 142 U.S. App.D.C. 213, 218, 440 F.2d 241, 246 (1971), that

"*whenever* evidence is brought in which is admissible only for a limited purpose, *it is plain error,* in the absence of manifest waiver, *to omit an immediate cautionary instruction*" [footnote omitted; emphasis in original]

for the reason that *Dixon,* unlike *McClain* and *Lofty,* did not involve the impeachment of one's own witness, but rather the impeachment of the defendant. Since here, as in *Dixon,* the impeachment of the

5. Rule 30 states in pertinent part:
No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. . . .
As noted in the dissent, the Supreme Court has not specifically endorsed the application of the plain error rule to instructional errors that have not been preserved for appeal in accord with Rule 30. *But see Lopez v. Uni-*

*ted States,* 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), where following a statement that the petitioner's failure to request a jury instruction precluded review of this issue under Rule 30, the Court stated:
Nor was there on this score any such plain error in the charge, affecting substantial rights, as would warrant reversal despite the failure to object. See Fed.Rules Crim. Proc., 52(b). . . . [*Id.* at 436, 83 S.Ct. at 1386.]

prosecutor's own witness is not involved, I suggest that *Dixon* is more analogous to this situation than is *Lofty*. The *Dixon* court examined the precedents and determined that the immediate cautionary instruction in *Lofty* was useful to avoid confusion on the part of the jury when a prior inconsistent statement was introduced to rebut the surprise testimony of the government's own witness. The court in *Dixon* observed

> . . . the situation which confronted the court in *Coleman* [*Coleman v. U. S.*, 125 U.S.App.D.C. 246, 371 F.2d 343 (1966), *cert. denied*, 386 U.S. 945, 87 S. Ct. 979, 17 L.Ed.2d, 875 (1967)], *Jones* [*Jones v. U. S.*, U.S.App.D.C. 36, 385 F. 2d 296 (1967)], and *Lofty* justified an immediate instruction *sua sponte* by the trial court because jury confusion undoubtedly occurred where trial counsel suddenly claimed surprise at his own witness's testimony, and was then allowed to introduce . . . a prior [inconsistent] statement . . . . [287 A.2d at 99.]

There was no element of surprise in the instant case, and I see no reason to conclude that the jury could have been so confused as to require an immediate cautionary instruction.

It is quite a different situation when a prosecutor is caught by surprise [1] and must impeach his own witness with prior statements for it may well appear to the jury that the earlier inconsistent statements were being admitted for the truth of their content as a part of the government's case in chief.

In *Dixon* the court went on to observe that:

> In considering the propriety of a rule which would require an *immediate* cautionary instruction *sua sponte* by the trial court (unless trial counsel specifi-

cally requests no instruction), it is important to note that such a rule would be a departure from the practice found generally throughout the United States. An extensive examination of the law of both state and federal jurisdictions reveals that, as a general rule, counsel *must request* an instruction on evidence which is admitted for a special or limited purpose . . . . [287 A.2d at 98 (footnotes omitted; emphasis in original).] [2]

I see no logic in departing from what appears to me to be the sound reasoning of *Dixon* which I submit should control the result here.

*Dixon* was not the first case in this jurisdiction to apply that philosophy for it was held many years ago that:

> Except upon essential principles of law concerning which it is the duty of the trial judge to instruct the jury whether requested or not, there is no duty to instruct in the absence of a request. And the request must be proper. It is not the duty of a trial judge to recast or modify an erroneous or misleading requested instruction. [*George v. United States,* 75 U.S.App.D.C. 197, 201, 125 F.2d 559, 563 (1942) (citations omitted).]

The power of this court to notice unobjected to defects affecting substantial rights is discretionary and it has long been held in this jurisdiction that "'[a]bsent a clear showing of prejudice, we are not disposed to notice alleged errors which are raised for the first time on appeal.'" *Hill v. United States,* D.C.App., 280 A.2d 925, 926 (1971). *See Adams v. United States, supra* at 234. It is specifically provided at the end of Super.Ct.Cr.R. 30 [3] regarding instructions to the jury that:

> No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating dis-

---

1. In *Coleman v. United States, supra* at 249, 371 F.2d at 346, quoted with approval in *Lofty,* the court seemed to place some emphasis on the fact that the element of surprise was present which is quite the opposite of the case here.

2. *See also* P. Robinson, *A Proposal for Limiting the Duty of the Trial Judge to Instruct the Jury Sua Sponte,* 11 San Diego L.Rev. 325, 328 (1974).

3. Identical to Fed.R.Crim.P. 30.

tinctly the matter to which he objects and the grounds of his objection. . . .

In a case not involving a failure to instruct, but involving an erroneous instruction not objected to, the Ninth Circuit observed that the purpose of the rule is to permit courts sua sponte to notice errors which the parties failed to call to the court's attention "but *it does not authorize the consideration of matters which another rule specifically states shall not be assigned as error.*" *Herzog v. United States*, 226 F.2d 561, 570 (9th Cir. 1955), *adhered to on rehearing*, 235 F.2d 664, *cert. denied*, 352 U.S. 844, 77 S.Ct. 54, 1 L.Ed.2d 59 (1956) (emphasis in original).

The Fifth Circuit applied the literal reading of rule 30 to a case very similar to this involving the impeachment of a codefendant and refused to hold it was plain error not to instruct the jury sua sponte even though no instruction on impeachment testimony was included later in the general instructions, *United States v. Easterly*, 444 F.2d 1236 (5th Cir. 1971). *Also see Blakeley v. United States*, 249 F.2d 235 (5th Cir. 1957).

In another case where a prior inconsistent statement of the accused was allowed in evidence without a limiting instruction, none having been requested, the Second Circuit quoted from 1 Wigmore, Evidence § 13 at 301 (3d ed. 1940) to the effect that "[t]he better opinion is that the *opponent of the evidence must ask for that instruction*; otherwise, he may be supposed to have waived it as necessary for his protection." The court then added, "[t]he defense may not remain silent in hopes that the district court will fall into reversible error where the possible error could have been passed upon and cured, if need be, by a properly timed objection." *United States v. Curry*, 358 F.2d 904, 912 (2d Cir.), *cert. denied*, 385 U.S. 873, 87 S.Ct. 187, 17 L. Ed.2d 100 (1966) (footnote omitted) (emphasis in original). Apparently no instruction of any kind was given as to the limit-

ed purpose for admitting the testimony and the court found no reversible error even though the failure could have been deemed to be quite damaging. I find no logical reason why the same result should not obtain here.

In a case remarkably like the one at bar where appellant called a codefendant as a witness who was impeached with a prior inconsistent statement implicating the appellant, but where no instruction was given limiting the use of the testimony to purposes of impeachment, the Second Circuit, following the same rule as in *Curry, supra,* said: "Appellant made no request for such instructions at the trial; his failure to make such a request bars him from raising the issue for the first time on appeal." *United States v. Ballentine,* 410 F.2d 375, 377 (2d Cir. 1969) (citations omitted).

It is important to one who has a strong defense to have the case carefully and properly tried. But the plain error rule invites a shrewd attorney who has a weak defense to conclude that his best strategy is to remain silent and let the judge make his own way hoping thereby to "sow error in the record". If the courts are to grant relief frequently by labeling it plain error we cannot expect defense counsel to help trial courts to avoid error which is essential to a strong adversary judicial system. The time has come to recognize that there must be a line beyond which we will not make an exception to the general rule that an unobjected to error will not be noticed on appeal; otherwise resort to the exception will continue to expand endlessly by feeding on itself. A decision in one close case is being used as authority to extend the exception to another but less justifiable situation just as we are asked to extend it here because of the arguable similarity with *Lofty, supra.* It is one thing for appellate courts to reverse when the trial court has been guilty of misdirection, but quite another to do so for delayed direction.

I find it significant that in the course of the trial in the instant case when the prosecutor interrupted the examination of the complainant by counsel for defendant Allen to observe he was "digging the ditch deeper for [the other two codefendants], and if neither of these counsel have any objections to what's going on, I don't have any objections", counsel for appellant Johnson responded as follows indicating he was well aware of the necessity of a defense lawyer sometimes remaining silent and not objecting even where an objection might seem to be required. He said:

> MR. ARMSTRONG: Well, Your Honor, on behalf of Mr. Johnson, I am aware of the problem that [the prosecutor] has just mentioned.
>
> Counsel for these defendants have to make tactical decisions as to whether or not to maintain a low profile or object at every point. I made many decisions, as I have made other decisions in the course of the trial, regardless of if my client disliked my failure to cross-examine [the witness] earlier. There is some truth in what [the prosecutor] is saying with respect to further examination, the course it may take, as Mr. Koenick proceeds. But I would have to make judgments as I go along.

Super.Ct.Cr.R. 52(b) is identical to the same numbered federal rule promulgated by the Supreme Court, but I am unable to find any direct endorsement by that Court of the use of the plain error rule to override rule 30 requiring objections be made to jury instructions if error is to be preserved. We know, however, that many years ago the Supreme Court said that:

> Exceptions to a charge must be specifically made in order to give the court opportunity then and there to correct errors and omissions, if any. *Pennsylvania R. R. Co. v. Minds,* 250 U.S. 368, 375, 39 S.Ct. 531, 63 L.Ed. 1039, and cases cited; *Allis v. United States,* 155 U.S. 117, 122, 15 S.Ct. 36, 39 L.Ed. 91. Even

if some of the instructions were erroneous, the exceptions taken were not such as to require a new trial. [*Burns v. United States*, 274 U.S. 328, 336, 47 S.Ct. 650, 653, 71 L.Ed. 1077 (1927).]

In *Humes v. United States,* 170 U.S. 210, 211–12, 18 S.Ct. 602, 42 L.Ed. 1011 (1898), where error was assigned for failure of the court to give certain instructions, the Supreme Court said:

> We cannot regard as error the omission of the court to give instructions which were not asked. In *Isaacs v. U. S.,* 159 U.S. 487, 491, 16 Sup.Ct. 51, [40 L.Ed. 229], Mr. Justice Brown said: *"It is no ground for reversal that the court omitted to give instructions, where they were not requested by the defendant.* It is sufficient that the court gave no erroneous instructions." [Citations omitted; emphasis added.]

It appears that so far there has been no specific guidance from the Supreme Court in applying those two federal rules but in view of the clear language it incorporated in rule 30, one might expect it to adhere to its opinion in *Humes.*

This is not to contend that an appellate court should fail to recognize plain error or that it should affirm a judgment where it is clear an essential element of a fair trial was absent, such as advice to the jury as to the basic elements of the offense or of the standard of reasonable doubt. These are not merely desirable but essential to a fair trial. But here the defect is not of that nature. It is simply one of the court giving an instruction only once when it should have been given twice. Absent a clear showing of a miscarriage of justice, we should not be quick to relieve one of a conviction because of so-called plain error where trial counsel perceived no error at the time and the evidence of guilt was convincing.

When errors occur at trial but it is not clear that a substantial right was adversely

affected by failure of counsel and the court to act, appellant's contention might better be reviewed on the standard of whether there was ineffective assistance of counsel.[4] However, this is not to be equated with unsuccessful trial strategy or tactics. Counsel here was not inexperienced and was alert to the problem of making tactical decisions as the trial progressed.

I would follow the policy adopted by the Supreme Court and the Second Circuit as reflected by *Humes, Burns, Curry,* and *Ballentine, supra,* and hold that appellant's failure to request the instruction at trial bars him from raising the issue for the first time on appeal.

---

4. *A Proposal for Limiting the Duty of the Trial Judge to Instruct the Jury Sua Sponte, supra* at 352.